IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| ROBERT CASTLEBERRY, | Civil Action No. |
| Plaintiff, | 2:16-cv-00128-LGW-BWC |
| v. | JURY TRIAL DEMANDED |
| CAMDEN COUNTY, | |
| Defendant. | |

## CONSOLIDATED PROPOSED PRETRIAL ORDER

1.      Counsel are to discuss and agree on every possible factual stipulation. The stipulations must be reduced to writing, signed and filed with the consolidated proposed pretrial order as ATTACHMENT "A" hereto. **Stipulations can spare witness testimony, trial time, and expense. If a party feels the other side is in bad faith refusing to stipulate, they shall set forth "proposed stipulations" on ATTACHMENT "A." Costs of proving what, at trial, was never really disputed and what should have been stipulated, may be taxed against the offending party and attorney. Those costs may include witness fees and additional attorney preparation time costs.**

2.      As ATTACHMENT "B" to the proposed pretrial order, the parties may, but are not required to, submit questions which they desire the Court to propound to jurors concerning their legal qualifications to serve and any other questions they wish propounded for information purposes. If the parties choose to submit general voir dire questions hereunder, they may submit the questions jointly as one attachment or separately as ATTACHMENTS "B-1" and "B-2".

3.     State the names of all parties, firms and attorneys to be used in qualifying the jury. State the name of any insurance company involved, and whether it is a stock or mutual company. State the names of all counsel who are members of any firm involved on a contingent fee basis. At the pretrial conference, counsel may be required to disclose policy limits and details of any insurance coverage.

      For Plaintiff:      Adeash "AJ" Lakraj
                            Barrett & Farahany (contingent fee basis)

                            Amanda Farahany
                            Barrett & Farahany (contingent fee basis)

                            Robert Castleberry
                            Plaintiff

      For Defendant:    Charles A. Dorminy
                            Hall Booth Smith, P.C.

                            William S. Mann
                            Hall Booth Smith. P.C.

                            Camden County, Georgia
                            Defendant

                            Western World Insurance Company

4.     Identify the basis upon which the jurisdiction of this Court is based and any questions relating to its jurisdiction.

- **Plaintiff invokes the jurisdiction of this court pursuant to 42 U.S.C. § 12101 et seq., 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 12117. In addition, the Defendant has been properly served with process in this matter, such that personal jurisdiction exists.**

2

- **This Court is an appropriate venue for all Plaintiff's claims under 28 U.S.C. § 1391(b), because all of the parties reside within the Southern District of Georgia, and all or a substantial majority of the events giving rise to Plaintiff's claims occurred in this judicial district.**

- **The Defendant has no question relating to this Court's jurisdiction.**

5.    List any motions or other matters in the case which remain unresolved. Any motion not so enumerated shall be deemed withdrawn by the moving party.

**Plaintiff intends to file appropriate Motions in Limine or other motions as necessary prior to trial.**

**Defendant may file motions in limine or other motions as necessary prior to trial. Defendant also wishes to compel the production of documents and physical evidence from First Coast News.  In accordance with the Rule 26 Instruction Order, the parties are required to seek a conference with the Court prior to filing a Motion to Compel. (Doc. 4 at 5–6.) Defendant requested such a conferral in the Status Report filed on October 2, 2017. (Doc. 24 at 1.) Defendant subpoenaed all interview footage of Plaintiff's television interview with First Coast News shortly after Plaintiff's deposition. Although First Coast News produced a publicly-available news article, and a link to the publicly-available interview that aired, it did not produce the uncut footage from the interview despite the subpoena specifically requesting that footage. First Coast News objected to producing the uncut video footage under a First Amendment argument. The Defendant stands ready to file its Motion as the First Amendment does not protect the release of this evidence.**

6.    All discovery is to be completed pursuant to the Local Rules. The date of the conclusion of the discovery process and the expected completion of any untranscribed deposition shall be stated.

**Discovery was completed on 9/15/2017.  However, as noted above, Defendant continues to seek all footage of Plaintiff's interview with First Coast News.**

7.     State whether the names of the parties in the above-captioned case(s) are complete and correct and whether there is any question of misjoinder or non-joinder.

**The names of the parties are complete and correct. There is no question of misjoinder or non-joinder.**

8.     **Outline of Plaintiff's case.**

On January 27, 2015, Plaintiff Robert Castleberry ("Plaintiff" or "Mr. Castleberry") provided his employer, Defendant Camden County ("Defendant" or "the County"), documentation from two different psychologists – one hand-picked by the County – diagnosing him with Autism Spectrum Disorder ("Autism"). He was seeking accommodations for this disability. Both psychologists stated that it would be "beneficial" if Mr. Castleberry were allowed to work from home, although neither the psychologists nor Mr. Castleberry claimed this was the only way to accommodate his disability. Previously, Mr. Castleberry had provided the County with a list of 13 other proposed accommodations. He was also taking previously-approved intermittent FMLA leave – 30 minutes per week – for treatment of his condition. The next day, January 28, Mr. Castleberry emailed Katie Howard ("Ms. Howard"), the County's HR Director, and requested to "begin again the interactive process of discussing accommodation and setting parameters of those accommodations." In this email, Mr. Castleberry also complained of various actions by the County that he stated were retaliation in violation of the Americans with Disabilities Act ("ADA").

The County fired him the next day. In an email notifying Mr. Castleberry of the termination, Ms. Howard stated that the County could not accommodate his "need" to work from home (even though neither Mr. Castleberry nor the psychologists ever said he "needed" to work from home). Ms. Howard then stated the County could not accommodate his disability and he was, therefore, "release[d] . . . from employment." In so saying, Ms. Howard and the County did not address the list of possible accommodations Mr. Castleberry had previously provided.

9.     **Outline of Defendant's case.**

4

Robert Castleberry was hired as a 4-H Program Associate in June 2013. In that position, Castleberry provided support to the 4-H Program Director, Amber Bishop, and provided oversight for the Georgia 4-H Youth Development Program in Camden County. An essential function of this job, as stated in the written job description provided to Castleberry, is communication and interaction Ms. Bishop, and with coworkers, staff, students, and the public.

Throughout his employment as a 4-H Program Associate, Castleberry had personality conflicts with his female coworkers—mainly his supervisor, Amber Bishop. Because of his sensitivity to sound, Castleberry wore earplugs at work. He also requested to move offices twice and was permitted to do so. When Castleberry becomes overwhelmed or stressed, he allegedly shuts down and chooses not to communicate verbally. Admittedly, the only time Castleberry "shut down" in his 18 months working as a 4-H Program Associate was twice when he was criticized by Ms. Bishop.

Because of his conflicts with Ms. Bishop, Castleberry applied for FMLA leave on December 31, 2014.  The therapist charted that he had attention-deficit/hyperactivity disorder and inattentive social anxiety disorder. The County granted Castleberry FMLA leave for 30 minutes each week to seek therapy for this condition.

On January 9, 2015, Castleberry requested to have his office moved for the third time—this time to the storage room. He also requested to wear noise-cancelling headphones while at work and to have advanced notice of "coaching sessions" and meetings. Katie Howard, the HR Director, told Castleberry that he needed to meet with a psychologist because the County needed additional information from a medical practitioner to better understand the limitations and accommodations necessary for Castleberry's working environment. Castleberry was put on paid administrative leave on January 13, 2015 while the County tried to obtain all the information necessary to determine how it could best accommodate his needs. Mr. Castleberry saw psychologist, Laurie Fairall on January 15, 2015, and January 22, 2015, to be evaluated for Asperger's. The psychologist told Castleberry he had symptoms consistent with Autism Spectrum Disorder. The County then requested Castleberry be evaluated by Dr. Ellinor Burke.

Dr. Burke stated that it was her opinion that Castleberry "struggles with interpersonal relationships at work." She stated that "Mr. Castleberry has requested some accommodations in the workplace. He would like to work in a more isolated setting or from home. This would be beneficial in dealing both with his sensitivity to noise and his social anxiety related to Asberger's."

The County terminated Castleberry's employment on January 29, 2015 because the accommodations requested, working in a more isolated setting or from home, would not enable Castleberry to perform the essential functions of his job.

10.    In all cases in which violation of the United States Constitution or a federal or state statute or regulation is alleged, the party making such claim shall specifically state the constitutional provision and/or statute allegedly violated and the specific facts on which such alleged violation is based. The party shall detail the damage or relief sought pursuant to such claim and recite supporting authority.

**Statue(s) Violated:**

- **Americans with Disabilities Act, as amended by the Americans with Disabilities Amendments Act of 2008 ("ADA").  42 U.S.C. § 12101,** *et seq.*
- **Family and Medical Leave Act ("FMLA").  29 U.S.C. § 2601,** *et seq.*

**Damage(s) Sought:**

- **A declaratory judgment that Defendant has engaged in unlawful employment practices in violation of the ADA and the FMLA.  28 U.S.C. § 2201;**
- **Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant Camden County from further unlawful conduct of the type described herein.  42 U.S.C. § 12117 and 29 U.S.C. § 2617;**
- **General damages for mental and emotional suffering caused by Defendant's misconduct.  42 U.S.C. § 12117;**
- **Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts.  42 U.S.C. § 12117;**
- **Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon.  42 U.S.C. § 12117 and 29 U.S.C. § 2617;**

- **Reasonable attorney's fees and expenses of litigation with any and all other costs associated with this action as provided by the FMLA and ADA.  42 U.S.C. § 12117 and 29 U.S.C. § 2617;**
- **Prejudgment interest at the rate allowed by law.  28 U.S.C. § 1961; and**
- **All other relief to which he may be entitled.  42 U.S.C. § 12117 and 29 U.S.C. § 2617.**

**Defendant contends that it did not violate state or federal law by terminating Plaintiff's employment. Thus, Plaintiff is not entitled to recover damages.**

11.    In tort cases, any party bearing a burden of proof shall list each and every act of negligence or intentional tort relied upon.

(a)    Under a separate heading, state all relevant statutes, rules, regulations and ordinances allegedly violated. Also, recite any supporting authority.

**Not applicable**

(b) List all items of damages claimed or non-monetary relief sought.

**Not applicable**

(c)    In all cases involving alleged permanent injuries or death, furnish a full statement as to the age, alleged life expectancy and/or probable duration of the injuries, and earnings, income tax records or other records to prove earnings.

**Not applicable.**

12.    In contract cases or any other action not addressed in paragraphs 10 or 11, any party having a burden of proof shall outline the particular alleged breach of contract or the basis of any other cause of action, enumerate any applicable statute

involved, and detail the damages or relief sought and recite appropriate supporting authority.

> **Not applicable.**

13.    If there is any dispute as to agency, state the contentions of the parties with respect to agency.

> **Not applicable.**

14.    State who has the burden of proof (including any affirmative defenses or special issues) and who has the opening and closing arguments to the jury.

**Plaintiff bears the burden of proof as to his claims under the ADA and the FMLA.  Defendant bears the burden of proof as to any affirmative defenses – including the defense of undue hardship to a Failure to Accommodate claim. In either case, the burden is "preponderance of the evidence."**

**Both parties are entitled to pre-trial opening statements and post-trial closing arguments.  Plaintiff has the right to make the first closing argument to the jury and reserves a limited amount of time, to be discussed at the pretrial conference, after Defendant's rebuttal closing argument for a final closing statement.**

15.    Under this paragraph, both plaintiff(s) and defendant(s) should separately list the witnesses whom each <u>will</u> have present at the trial and those whom each may have present at the trial. Witnesses intended to be used solely for impeachment shall be listed; however, if a party has a genuine reason for not listing and disclosing an impeachment witness, such party may address the Court ex parte and seek a ruling as to whether disclosure may be properly withheld. A representation that a party will have a witness present may be relied on by the opposing party unless notice to the contrary is given in sufficient time prior to trial to allow the opposing party to subpoena the witness or obtain his testimony. If a witness is not listed when the proposed pretrial order is filed, the Court will not allow the addition of a witness by any party, EXCEPT for providential or other good cause shown to the Court by application for amendment to this Order.

**NOTE: COUNSEL MUST SUBMIT TO THE COURTROOM DEPUTY CLERK THREE COPIES OF THE TYPED WITNESS LIST AT THE PRETRIAL CONFERENCE.**

The following is a list of the fact witnesses that Plaintiff will have present at trial:

| Witness | Address |
| --- | --- |
| Robert Castleberry | |
| Amber Bishop | |
| Katherine Howard | |
| Tina Dasha | |
| Allison Fender, MA, LAPC | Lighthorse |
| Dr. Laurie Fairall | |
| | |
| | |
| | |
| | |
| | |

The following is a list of the fact witnesses that Plaintiff may have present at trial:

| Witness | Address |
| --- | --- |
| Louis Foltzer | |
| Joann Lindsey Milam | |
| John Meyers | |
| Jessica _____ | |
| Ellinor Burke, Ph. D. | Cumberland Health Services |
| | |
| | |

|  |  |
|--|--|
|  |  |

Plaintiff reserves the right to amend his witness list prior to Trial. Witnesses that Plaintiff does not reasonably anticipate calling for rebuttal or impeachment purposes are not included on this list. In addition, Plaintiff respectfully reserves the right to call at trial any witnesses listed by any other party.

The following is a list of the fact witnesses that Defendant will have present at trial:

| Witness | Address |
|---|---|
| Amber Bishop | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

The following is a list of the fact witnesses that Defendant may have present at trial:

| Witness | Address |
|---|---|
| | |
| Katie Howard | |
| Kathy Baldwin | |
| Tina Dasha | |
| Louis Foltzer | |
| Joann Milam | |
| Laurie Fairall, Psy.D. | |
| Lynn Roth, LPC | |

| | |
|---|---|
| Ellinor Burke, Ph.D. | |
| Nina Leonard, APRN | |
| Tanya Markham | |
| Allison Fender, LPC | |
| Medical records custodian from Lighthorse Healthcare, Inc. | |
| Medical records custodian from Cumberland Health Services, Inc. | |
| Shelby Danielsen | |
| Records custodian for First Coast News | |

**Defendant reserves the right to amend this list prior to trial. Defendant reserves the right to call at trial any witness listed by Plaintiff.**

**Plaintiff objects to Defendant calling Tanya Markham and Nina Leonard as witnesses because they were not identified during the discovery period.**

16.     All documents and physical evidence that may be tendered at the trial shall be exhibited to and initialed by opposing parties <u>prior to the pretrial conference</u>. All evidence shall be marked by the parties prior to the pretrial conference, and <u>the parties are encouraged to submit a joint exhibit list on a form supplied by the Clerk</u>. If separate exhibit lists are submitted, they shall be submitted on the forms supplied. Duplications of exhibits should be avoided to the extent practicable. Exhibit lists should be submitted to the Court at the pretrial conference. The material therein shall be identified as follows:

(a)     A list of documents and physical evidence submitted as joint exhibits.

(c)     Where separate lists are being submitted, a list of documents and physical evidence to be introduced by the plaintiff(s). Copies of such exhibits shall be provided to counsel for each other party.

Objections and reasons therefor shall be stated in writing and be filed five (5) days prior to the time of the pretrial conference. <u>Items not objected to will be admitted when tendered at trial.</u>

(d)     Where separate lists are being submitted, a list of documents and physical evidence to be introduced by the defendant(s). Copies of such exhibits shall be provided to counsel for each other party.

Objections and reasons therefor shall be stated in writing and be filed five (5) days prior to the time of the pretrial conference. <u>Items not objected to will be admitted when tendered at trial.</u>

(d)     Any document or other physical evidence listed by any party and not objected to, or to which objections have been overruled, may be received in evidence on offer by any other party, in the event the listing party does not actually offer it into evidence.

(e)     The foregoing shall not be deemed or construed to expand or limit the rules relating to the admissibility of evidence generally.

**NOTE: COUNSEL MUST SUBMIT TO THE COURTROOM DEPUTY CLERK THREE COPIES OF THE TYPED WITNESS LIST AT THE PRETRIAL CONFERENCE. All exhibits shall be cross-**

initialed by the attorneys for the parties and properly tagged as required by the Local Rules of this District. This cross-initialing procedure shall be completed when counsel meet to confer on the preparation of the pretrial order.

| Bates - Begin | Trial Exhibit Number | Date | Description |
|---|---|---|---|
| DefNoBate063017. | 1 | ??/??/???? | Handwritten notes |
| DefNoBate062217 | 2 | ??/??/???? | Handwritten notes re "E-Mail Joann" |
| DefNoBate063017. | 3 | ??/??/???? | Typed letter/notes re Robert Castleberry's job satisfaction |
| DefNoBate062217 | 4 | ??/??/???? | Handwritten notes re "Robert Castleberry" |
| DefNoBate063017. | 5 | ??/??/???? | Handwritten notes |
| DefNoBate062217 | 6 | ??/??/???? | Handwritten notes re "Meeting with Joann and Kathy" |
| DefNoBate062217 | 7 | ??/??/???? | Handwritten notes re "Written Warning" |
| CASTLEBERRY00686 | 8 | ??/??/???? | Timeline of events |
| DefNoBate062217 | 9 | Sat 03/01/2014 | Social media post by Robert Castleberry |
| DefNoBate062217 | 10 | Sat 03/08/2014 | Social media post by Robert Castleberry |
| DefNoBate062217 | 11 | Sat 05/03/2014 | Social media post by Robert Castleberry |
| CASTLEBERRY00630 | 12 | ??/??/2005 | Camden County Personnel Policy |
| DefNoBate053017. | 13 | ??/??/2010 | Camden County FMLA Policy |
| DefNoBate053017. | 14 | ??/??/2010 | Camden County Sexual and Other Unlawful Harassment policy |
| DefNoBate053017. | 15 | ??/??/2010 | Camden County Disability Accommodation policy |
| DefNoBate053017. | 16 | ??/??/2010 | Camden County Chain of Command Grievance policy |
| DefNoBate053017. | 17 | Fri 06/01/2012 | Job Description for 4-H Program Associate |
| DefNoBate063017. | 18 | ??/??/2013 | Notes re Program Associate candidates |
| DefNoBate063017. | 19 | ??/??/2013 | Castleberry online resume, submitted cover letter and resume |
| DefNoBate063017. | 20 | ??/??/2013 | Castleberry certification documents |
| DefNoBate062217 | 21 | 05/??/2013 | Questions for references for Program Associate position |
| DefNoBate063017. | 22 | Mon 05/20/2013 | Notes from interview with Robert Castleberry |
| DefNoBate053017. | 23 | 06/??/2013 | Castleberry personnel file |
| DefNoBate062217 | 24 | Mon 11/18/2013 | Castleberry Performance Review |
| CASTLEBERRY00712 | 25 | Tue 12/31/2013 | Castleberry 2013 tax documents |
| DefNoBate053017. | 26 | Fri 03/14/2014 | Typed notes from meeting with Robert Castleberry |

| DefNoBate053017. | 27 | Wed 05/07/2014 9:39 a.m. ET | email re Office Picture |
|---|---|---|---|
| CASTLEBERRY00605 | 28 | Fri 06/27/2014 8:51 p.m. ET | email re: Camden County Office Complaint |
| DefNoBate053017. | 29 | Sun 06/29/2014 | Typed notes re Castleberry |
| DefNoBate053017. | 30 | Thu 11/13/2014 8:43 a.m. ET | email re Accomplishments for Nov. 12th Office Meeting |
| DefNoBate053017. | 31 | Mon 11/17/2014 1:41 p.m. ET | email re time off |
| DefNoBate053017. | 32 | Mon 11/24/2014 | Typed notes from meeting with Castleberry |
| DefNoBate063017. | 33 | 12/??/2014 | Excerpt of Transcription of audio file entitled "Amber Meeting Dec 18 - Accommodation" |
| CASTLEBERRY00682 | 34 | Tue 12/30/2014 | Letter from Lighthorse Healthcare, Inc. with proposed accommodations |
| CASTLEBERRY00669 | 35 | Wed 12/31/2014 | Designation Notice (FMLA) & Certification of Health Care Provider |
| CASTLEBERRY00731 | 36 | Wed 12/31/2014 | Castleberry 2014 tax documents |
| CASTLEBERRY00609 | 37 | Wed 12/31/2014 3:14 p.m. ET | Email re: FMLA Paperwork Approval |
| DefNoBate053017. | 38 | Wed 12/31/2014 3:16 p.m. ET | email re FMLA |
| CASTLEBERRY00769 | 39 | ??/??/2015 | Castleberry's mitigation efforts |
|  | 40 | 01/??/2015 | evaluation of Castleberry |
| CASTLEBERRY00674 | 41 | 01/??/2015 | Castleberry 4-H Staff Midyear Evaluation |
| DefNoBate053017. | 42 | 01/??/2015 | Typed notes re "background of the issues with Robert Castleberry" |
| DefNoBate053017. | 43 | Wed 01/07/2015 2:52 p.m. ET | email re Meeting this afternoon |
| DefNoBate053017. | 44 | Wed 01/07/2015 2:55 p.m. ET | email re Meeting this afternoon |
| DefNoBate053017. | 45 | Wed 01/07/2015 3:08 p.m. ET | email re Leaving Early |
| CASTLEBERRY00742 | 46 | Thu 01/08/2015 | Castleberry paycheck from Camden County BOC |
| DefNoBate053017. | 47 | Thu 01/08/2015 11:40 a.m. ET | email re Meeting this afternoon |
| CASTLEBERRY00628 | 48 | Thu 01/08/2015 1:29 p.m. ET | email re: Meeting Questions |
| DefNoBate053017. | 49 | Thu 01/08/2015 3:02 p.m. ET | email re Meeting Questions |
| DefNoBate053017. | 50 | Tue 01/20/2015 11:57 a.m. ET | email re Accommodation Request |
| CASTLEBERRY00683 | 51 | Mon 01/26/2015 | Lighthorse Healthcare, Inc. diagnosis/request for accommodation |

| CASTLEBERRY00684 | 52 | Tue 01/27/2015 | Psychological Evaluation by Cumberland Health Services, Inc. diagnosing Asberger's Disorder |
| DefNoBate053017. | 53 | Tue 01/27/2015 4:16 p.m. ET | email re Documentation (re: Lighthorse) |
| DefNoBate053017. | 54 | Wed 01/28/2015 11:13 a.m. ET | email re Interactive Process / Return to Work |
| DefNoBate053017. | 55 | Wed 01/28/2015 2:58 p.m. ET | email re Update |
| DefNoBate053017. | 56 | Thu 01/29/2015 9:03 a.m. ET | email re Communication |
| DefNoBate053017. | 57 | Thu 01/29/2015 11:17 a.m. ET | email re Communication |
| CASTLEBERRY00629 | 58 | Thu 01/29/2015 3:39 p.m. ET | email from Katie Howard re: Accommodation Request |
| DefNoBate053017. | 59 | Thu 01/29/2015 3:53 p.m. ET | email re Accommodation Request |
| DefNoBate053017. | 60 | Thu 01/29/2015 4:28 p.m. ET | email re ADA/EEOC Violations |
| CASTLEBERRY00001 | 61 | 02/??/2015 | Castleberry EEOC Complaint |
| CASTLEBERRY00010 | 62 | Wed 02/11/2015 | Castleberry EEOC Intake Questionnaire |
| CASTLEBERRY00743 | 63 | Thu 12/31/2015 | Castleberry 2015 tax documents |
|  | 64 | ??/??/2015 | Castleberry mitigation income |
| CASTLEBERRY00932 | 65 | Mon 05/23/2016 | Post on Camden County Help Wanted Facebook page |
| CASTLEBERRY00038 | 66 | 09/??/2016 | Castleberry EEOC File |
| CASTLEBERRY00933 | 67 | 01/??/2017 | Castleberry's mitigation efforts |
|  | 68 |  | Amber Bishop's floor plan |

## DEFENDANT'S EXHIBIT LIST

| DOCUMENT | BATES/PAGE NO'S. |
| --- | --- |
| Sexual and other unlawful Harassment Policy | 7 pgs. |
| Chain of command grievance policy | 1 pg. |
| Disability Accommodation Policy | 1 pg. |
| FMLA Policy | 9 pgs. |
| Castleberry's Personnel File | 50 pgs. |
| Castleberry's Written Job Description | 4 pgs. |

| | |
|---|---|
| Castleberry's Reprimand & Disciplinary Actions | 47 pgs. |
| E-mail between Castleberry & Katie Howard | 11 pgs. |
| E-mail between Castleberry & Amber Bishop | 16 pgs. |

| | |
|---|---|
| County Extension Personnel Contract/Memorandum of Understanding between The Board of Regents of the University System of Georgia on behalf of The University of Georgia Cooperative Extension and the Camden County Board of Commissioners, dated February 11, 2013. | 3 pgs. |

| | |
|---|---|
| Documents of Reprimands for Castleberry | 20 pgs. |
| Performance Reviews and line of reporting | 11 pgs. |
| Assignment Selection Form | 1 pg. |
| Program Assistant Certification documents | 22 pgs. |
| Photographs attached as exhibits at Castleberry's deposition | |
| Interview notes | 2 pgs. |
| Meeting notes | 1 pg. |
| Amber Bishop's notes | 14 pgs. |
| Documents pertaining to Castleberry's interview | 17 pgs. |
| Transcription of an audio file entitled "Amber meeting December 18 – Accommodations." | 12 pgs. |
| Castleberry's employment records from Covenant Village of Colorado | 58 pgs. |
| Castleberry's employment records from Lang's Marina Seafood Restaurant | 128 pgs. |
| Castleberry's employment records from Traeger Pellet Grills | 30 pgs |
| Castleberry's employment records from YMCA of Florida's First Coast | 35 pgs. |
| News article from First Coast News | 2 pgs. |
| Video of Castleberry's interview with First Coast News | |
| Uncut video of Castleberry's interview with First Coast News | |
| Castleberry's medical records from Lighthorse Healthcare, Inc. | 110 pgs. |
| Castleberry's medical records from Cumberland Health | 2 pgs. |

| Services, Inc. | |
| --- | --- |

**Plaintiff objects to Defendant's employment record exhibits and the First Coast News exhibits because they were not produced during the discovery period.**

17.    List all witnesses whose testimony by deposition will or may be offered by each party and the specific deposition pages and lines to be offered. All objections by opposing parties to any portions of the deposition(s) shall be set forth with specific reference to the portion of the testimony objected to and the basis therefor.

**Neither Plaintiff nor Defendant anticipate providing testimony by deposition. However, the Parties reserve the right to offer any testimony of a witness unavailable by law, including the medical providers listed.**

(a)    Prior to trial, counsel shall confer to eliminate all extraneous, redundant, and unnecessary matter, lapses, and colloquy between counsel in the deposition excerpts. Counsel shall also attempt to resolve all objections to deposition testimony to be offered.

(b)    The parties shall, if practicable, conform deposition exhibit numbers in trial questions and testimony to the numbers of trial exhibits.

18.    Each party shall separately provide a memorandum of authorities as to any questions of law likely to arise at the trial, including the merits of plaintiff(s)' claim, defenses asserted, matters of evidence, etc.

**<u>Plaintiff</u>**

## A. VIOLATION OF THE ADAAA – FAILURE TO ACCOMMODATE

The ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

To establish a *prima facie* case of discrimination under the ADA, the **Plaintiff** must prove three elements: "that, at the time of the adverse employment action, [he] had a disability, [he] was a qualified individual,[1] and [he] was subjected to unlawful discrimination because of [his] disability." *United States Equal Employment Opportunity Comm' n v. St. Joseph's Hosp., Inc*., 842 F. 3d 1333, 1343 (11th Cir. 2016).

As part of the third element, the law requires ("employer must") the employer to reasonably accommodate an otherwise qualified individual; failing to due so is evidence of "unlawful discrimination." *See Nadler v. Harvey*, No. 06-12692, 2007 U.S. App. LEXIS 20272, at *28 (11th Cir. 2007); *Lucas v. W.W. Grainer, Inc*, 257 F.3d 1249, 1255 (11th Cir. 2001); *Hilburn v. Murata Elecs. N. Am., Inc.,* 181 F.3d 1220, 1226 (11th Cir. 1999); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 (11th Cir. 1997). "An accommodation is reasonable, and thus required under the ADA, only if it allows the employee to perform the essential functions of the job." *Earl v. Mervyns, Inc.,* 207 F.3d 1361, 1365 (11th Cir. 2000). "Whether an accommodation is reasonable depends on specific circumstances." *Terrell v. USAir,* 132 F.3d 621, 626 (11th Cir. 1998).

As such, for this case, the **Defendant** has the burden to show that the accommodations suggested by Plaintiff were either (1) provided to him, or (2) not reasonable because the Plaintiff was still unable to perform essential functions of his job or that the accommodation "transformed" the essential function of his position.

---

[1] For this element, a **"qualified individual"** is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111 (8). "Accordingly, an ADA plaintiff must show either that he can perform the essential functions of his job without accommodation, or, failing that, . . . that he can perform the essential functions of his job with a reasonable accommodation." *Holly v. Clairson Indus., L.L.C.,* 492 F.3d 1247, 1256 (11th Cir. 2007) (citation omitted). "If the individual is unable to perform an essential function of his job, even with an accommodation, he is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA. In other words, the ADA does not require the employer to eliminate an essential function of the plaintiff's job." *Id*. (citation omitted). The essential functions "are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Id*.; *see also* 29 C.F.R. § 1630.2 (n) (2) (i) (stating that a "function may be essential because the reason the position exists is to perform that function").

A corollary to the "reasonable accommodation" requirement is the employer's obligation to engage in an "interactive process" with the disabled employee to determine whether and which reasonable accommodations are feasible. *Crutcher v. Mobile Hous. Bd.*, No. 04-0499-WS-M, 2005 U.S. Dist. LEXIS 35402, at \*47-49 (S.D. Ala. Oct. 20, 2005); *see also EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005) ("the ADA requires that employer and employee engage in an interactive process to determine a reasonable accommodation"). Simply put, once an employer becomes aware of the need for a reasonable accommodation, it "must make a reasonable effort to determine the appropriate accommodation. The appropriate accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." 29 C.F.R. pt. 1630, App § 1630.9 at 359. "Underlying the interactive process is the duty of the parties to act in good faith while searching for appropriate reasonable accommodation." *O'Dell v. Department of Public Welfare of Pennsylvania,* 346 F. Supp.2d 774, 785 (W.D. Pa. 2004); *see also Calero-Cerezo v. United States DOJ,* 355 F.3d 6, 24 (1st Cir. 2004) ("An employer's refusal to participate in the process may itself constitute evidence of a violation of the statute."); *Carroll v. England,* 321 F. Supp.2d 58, 69 (D.D.C. 2004) ("when the duty to reasonably accommodate arises; both employee and employer must exchange essential information and neither side can delay or obstruct the process").

A plaintiff alleging that his employer did not participate in the interactive process "must demonstrate: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319-20 (3d Cir. 1999).

### B. VIOLATION OF THE ADAAA – RETALIATION

ADA also provides that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203 (a).

At trial, the **Plaintiff** is first tasked to establish a *prima facie* case of retaliation under the ADA. Plaintiff must establish that he (1) engaged in statutorily protected activity,[2] (2) suffered an adverse employment action, and (3) that a causal connection exists between the two. *Batson v. Salvation Army*, 897 F.3d 1320, 1329 (11th Cir. 2018).

If Plaintiff establishes these three elements, then "the burden shifts to the **[Defendant]** to articulate a nondiscriminatory reason for the adverse action." *Id*.

If Defendant does this, then the burden shifts back to **Plaintiff**, who must show that Defendant's proffered reason was pretextual. *Id*. The Plaintiff satisfies this burden "by presenting evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id*. (internal quotation marks and citation omitted). Plaintiff may do this by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons that a reasonable factfinder could find them unworthy of credence." *Holton v. First Coast Serv. Options, Inc*., 703 F. App'x 917, 923 (11th Cir. 2017). "Although a plaintiff can use temporal proximity to show a defendant's proffered reason for termination was pretextual, temporal proximity alone does not establish pretext." *Jackson v. Hennessy Auto*, 190 F. App'x 765, 768 (11th Cir. 2006).

## C. VIOLATION OF THE FMLA – INTERFERECE AND RETALIATION

Under the FMLA, an eligible employee is entitled to up to twelve weeks of leave each year because of a serious health condition. See 29 U.S.C. § 2612(a)(1). "To preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act,

---

[2] For this element, "it is sufficient that an employee have a good faith, objectively reasonable belief that his activity is protected by the statute." *Standard v. A.B.E.L. Servs., Inc.*, 161 F. 3d 1318, 1328 (11th Cir. 1998). A request for reasonable accommodation also constitutes protected activity if the employee has a good faith, objectively reasonable belief that he is entitled to the requested accommodation under the ADA. *Id*.

*see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c).'" *Wascura v. City of S. Miami*, 257 F.3d 1238, 1247-48 (11th Cir. 2001) (quoting *Strickland v. Water Works and Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001)).


**INTERFERENCE**: "In order to state an interference claim under the FMLA, the **Plaintiff** need only demonstrate by a preponderance of the evidence that he was entitled to a benefit the employer denied." *Jarvela v. Crete Carrier Corp.*, 776 F.3d 822, 831 (11th Cir. 2015) (citation omitted). For an FMLA interference claim, the employer's motives are irrelevant. *Martin v. Brevard Cty. Pub. Schs.*, 543 F. 3d 1261, 1266-67 (11th Cir. 2008). Importantly, "an employee can be dismissed, preventing her from exercising her right to commence FMLA leave, without thereby violating the FMLA, if the employee would have been dismissed regardless of any request for FMLA leave." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010).

**RETALIATION**: To establish a prima facie case of retaliation under the FMLA, an employee must show that, "(1) he engaged in statutorily protected activity, (2) he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Jarvela*, 776 F.3d at 832 (11th Cir. 2015). Once this burden is met, **Defendant** can show that the Plaintiff would have been terminated regardless of his FMLA leave. See Batson v. Salvation Army, 897 F.3d 1320, 1331-21 (11th Cir. 2018). Plaintiff can then turn again to showing that this reason was pretextual. *Id*.

Even though the analyses for these two claims "merge at the summary judgment stage, at trial, it remains the **employer's** burden to establish its affirmative defense by showing that it did not interfere with its employee's substantive rights under the FMLA by terminating the employee." *Batson*, 897 F.3d at 1236 n.6.

## Defendant

**Defendant objects to Plaintiff's recitation of the law as being binding on this Court or read to the jury. Defendant requests the opportunity to brief any issue outlined by the Plaintiff should the same be used at trial.**

## I. Burden shifting

"Under the controlling law in this Circuit, '[t]he burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims.'" *Holly v. Clairson Industries, LLC*, 492 F.3d 1247, 1255 (11th Cir. 2007) (quoting *Earl v. Mevyns*, 207 F.3d 1361, 1365 (11th Cir. 2000) (per curiam)). To establish a prima facie case of discrimination under the Americans with Disabilities Act, a plaintiff must show: "(1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." *Id.* (citation omitted). Once a prima facie case is established, the employer bears the burden of articulating a legitimate, nondiscriminatory reason for the challenged employment decision, which the employee must then demonstrate to be a pretext designed to mask discrimination/retaliation. *Id.* (citations omitted); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

## II. Definition of "disability" under the ADA.

"Disability" means "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1)(A)–(C).

## III. A non-physician cannot opine about medical diagnoses in Georgia.

Georgia law considers opinions about medical diagnoses to fall outside the limits of the expertise of a non-physician. *See* O.C.G.A. § 43-34-21(3) ("[t]o practice medicine" means, among other things, "to hold oneself out to the public as being engaged in the diagnosis ... of disease, defects, or injuries of human beings"); *Hunnicutt v. Hunnicutt*, 237 Ga. 497, 228 S.E.2d 881 (1976) (diagnosis and potential continuance of disease or other medical condition are "medical questions to be established by physicians as expert witnesses"). Castleberry has not been diagnosed by a medical doctor with ASD or any other disability.

## IV. Interactive Process

**An employer cannot be held liable merely for failing to engage in the interactive process itself, regardless of whether a reasonable accommodation could in reality have been made for the employee.** *See Willis v. Conopco, Inc.*, **108 F.3d 282, 285 (11th Cir. 1997);** *Spears v. Creel*, **607 F. App'x 943, 950 (11th Cir. 2015) (per curiam). The employee bears the responsibility of initiating the interactive process by providing notice of his disability and requesting accommodation for it.** *Taylor v. Phoenixville Sch. Dist.*, **184 F.3d 296, 313 (3d Cir. 1999). Although the employee's request need not be written, nor "formally invoke the "magic words 'reasonable accommodation,' the notice nonetheless must make clear that the employee wants assistance for his or her disability."** *Taylor*, **184 F.3d at 313. The employer, in other words, must know of both the disability and the employee's desire for accommodations for that disability.** *Id.* **Employers are not required to "assume employees are disabled and need accommodations."** *Id.*

19.    Plaintiff's counsel estimates **2** (days) (hours) to present plaintiff's case; defendant's counsel estimates **1 day** to present the defense.

20.    Plaintiff __**X**_ has ___ has not offered to settle.
       Defendant _**X**__ has ___ has not offered to settle.

       It appears at this time that there is
       ___ A good possibility of settlement.
           Some possibility of settlement.
       _**X** No possibility of settlement.

       The parties ___do __**X**_ do not wish to confer with the Court regarding settlement.

21.    State any other matters which should be covered by pretrial order, including rulings desired of the Court prior to trial.

       **Not Applicable**

22.    State whether or not the issues of liability and damages should be tried separately (bifurcated) and give any other suggestion toward shortening the trial.

Where bifurcation is opposed by any party, such party shall state the reasons for such opposition.

**Plaintiff's Response:**

**Plaintiff requests that the issues of liability and damages be tried within the same trial and opposes bifurcation.**

**First, Plaintiff's evidence regarding damages is not expected to be extensive – some testimony regarding the effect of Defendant's illegal actions on his life and presumably undisputed testimony and documents regarding the amount of his compensation with when working for Defendant. Therefore, including evidence regarding damages is not likely to significantly impact the length of the trial. Second, Plaintiff anticipates that his damages evidence will be at least partially intertwined with evidence of his disability. Therefore, a separate trial on damages would be duplicative.**

**Defendant's Response:**

**Defendant requests that any evidence in support of punitive damages and attorney's fees be bifurcated.**

23.    In cases where either party requests bifurcation of issues or a special verdict, submit a copy of the proposed verdict as PLAINTIFF'S ATTACHMENT "C" and/or DEFENDANT'S ATTACHMENT "C" hereto. Lead counsel are to discuss and agree on such special verdict where possible. Where agreement is not reached, state the basis for any objections to the special verdict request.

24.    In non-jury cases, the parties shall each file their proposed findings of fact, summary of depositions, and conclusions of law not later than one week prior to the assigned trial date.

    **Not Applicable**

25.    The final proposed pretrial order shall be signed by counsel for each party and shall contain a final paragraph, as follows:

**IT IS HEREBY ORDERED that the foregoing constitutes a PRETRIAL ORDER in the above case(s), that it supersedes the pleadings which are hereby amended to conform hereto and that this PRETRIAL ORDER shall not be amended except by ORDER OF THE COURT.**

IT IS SO ORDERED this _____ day of _____, 2019.

_____
UNITED STATES DISTRICT JUDGE

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

_____          _____
Counsel for Plaintiff                                        Counsel for Defendant

27

# ATTACHMENT A

## PROPOSED STIPULATIONS

1) The Camden County 4-H Extension Office provides services to youths ages 9–19, including hands-on learning programs, summer camps, classroom presentations, and community service activities.

2) Plaintiff Robert Castleberry ("Plaintiff" or "Mr. Castleberry") began working for Defendant Camden County ("Defendant" or "the County") as a 4-H Program Associate in the 4-H Office in June 2013.

3) As a 4-H Program Associate, Castleberry provided support to Amber Bishop and oversight for the Georgia 4-H Youth Development Program in Camden County.

4) Camden County provided Castleberry a written position description outlining the essential duties and responsibilities of the 4-H Program Associate position.

5) Defendant Camden County is a covered employer under the FMLA.

6) Defendant Camden County employed more than 50 employees within a 75-mile radius of Plaintiff's worksite.

7) There is no dispute that Mr. Castleberry worked for more than 12 months for the county, including for more than 1,250 hours in the 12-month period immediately preceding his requested intermittent FMLA leave.

8) Amber Bishop was Mr. Castleberry's supervisor.

9) Castleberry wore earplugs while at work.

10) Castleberry requested Bishop to move his office to reduce the noise level he experienced from an adjacent coworker's office.

11) When Castleberry is overwhelmed and overstressed, he sometimes "shuts down."

12) The only times Castleberry "shut down" in his 18 months working as a 4-H Program Associate was approximately twice.

13) On December 18, 2014, Castleberry met with Bishop to discuss his request to be moved.

14) Castleberry applied for intermittent FMLA leave on December 31, 2014 after a therapise noted that he had attention-deficit/hyperactivity disorder and inattentive social anxiety disorder.

15) Mr. Castleberry provided his FMLA paperwork to the County on December 31, 2014, and HR official Tina Dasha returned it to him with the County's approval of his FMLA leave that same day.

16) The County approved Mr. Castleberry taking intermittent FMLA leave (30 minutes each week) to seek treatment.

17) On January 8, 2015, Mr. Castleberry forwarded his counselor Allison Fender's December 30, 2014 letter to HR official Tina Dasha notifying the County that he had been diagnosed with Inattentive Type Social Anxiety Disorder and that he needed accommodations therefor. The County acknowledged receipt of this letter.

18) On January 8 or 9, 2015, Castleberry testified that he again requested to be moved and requested to wear noise-cancelling headphones while at work.

19) Castleberry also requested "advanced notice of coaching sessions" because Bishop called him into her office "for a surprise meeting" to discuss "a whole lot of things, a lot of complaints and criticisms against me."

20) Bishop emailed Castleberry a list of topics she wanted to discuss with him after her meeting with Dasha.

21) On January 12, 2015, Howard emailed Castleberry telling him that Ellinor Burke, Ph.D., a psychologist, could meet with Castleberry.

22) Mr. Castleberry was placed on administrative leave on January 13, 2015.

23) Katherine Howard, Defendant's Director of Human Resources, told Mr. Castleberry that the December 30 letter from his counselor was not sufficient and instructed him to see a psychologist she had selected, Dr. Ellinor Burke, to assist with a diagnosis and with possible accommodations.

24) On January 15, 2015, Castleberry underwent a psychological assessment by Laurie Fairall, a psychologist.

25) Dr. Burke provided faxed her psychological evaluation of Mr. Castleberry to the County on January 27, 2015.

26) Ms. Howard, Defendant's HR Director, admits receiving the January 27, 2015 psychological evaluation from Dr. Burke.

27) Ms. Howard admits she did not engage in any interactive process with Plaintiff in response to this January 28, 2015 email.

28) Mr. Castleberry was Terminated from his position on January 29, 2015.

29) Mr. Castleberry was not terminated due to performance issues.

30) Ms. Howard and Ms. Bishop were also among the team that made the decision to terminate Mr. Castleberry's employment.

## <u>ATTACHMENT B-1</u>

**PLAINTIFF'S PROPOSED GENERAL VOIR DIRE QUESTIONS**

### I.     BIOGRAPHICAL

1.     Please state your full name.

2.     Where do you live? How long have you lived there? With whom do you live?

3.     What is your date of birth?

4.     What is your marital status?

5.     What is your spouse's name? Children's names and ages?

6.     What is your occupation?

7.     What is your spouse's occupation?

8.     What is your highest level of education?

9.     What is your spouse's highest level of education?

10.    Have you or a family member ever sued anyone? If so, please provide details.

11.    Have you of a family member ever been sued? If so, please provide details.

12.    Are you involved in any civic or volunteer organizations? If so, please tell us about them.

13.     Are you now of have you ever been a member of a labor union? If so, which union?

14.     Do you have any current or prior employment history in the following:

      a.      Office work, for example secretarial, data entry, and or human resources;

      b.      Law or the legal field;

      c.      Management;

      d.      Government standards or regulation

15.     How would you describe yourself:

      a.      Very conservative;

      b.      Conservative;

      c.      Moderate;

      d.      Liberal;

      e.      Very Liberal;

      f.      Other;

16.      If you had a disability and your employer refused to accommodate you, would you file a lawsuit?

17.     From where do you get your information about lawyers?

18.   Have you or a family member ever thought you had good reason to sue, but decided against it? If so, please explain.

19.   Is there anything in your background or experience that could make you find for or against a company just because you would not want to hurt the company?

## II.   DESCRIPTION OF THE CLAIM

20.   There are federal laws known as the Americans with Disabilities Act and the Family Medical Leave Act. The American with Disabilities Act protects individuals with disabilities in the work place.  Among the protections provided by the Americans with Disabilities Act is a requirement that an employer provide reasonable accommodations to an employee's disability if such accommodation does not constitute an undue hardship. The Family Medical Leave Act entitles eligible employees to take unpaid protected leave for specified family and medical reasons. In this case, Plaintiff Robert Castleberry contends Defendant Camden County was on notice of Plaintiff's disability and failed to accommodate his. Plaintiff further contends that Defendant illegally terminated his employment because of his disability and because he complained of disability discrimination. Finally, Plaintiff contends Defendant interfered with his right to exercise FMLA leave or because he sought to exercise his right to such leave and, as a result, that

Defendant has violated federal law. Defendant disagrees with these contentions and will take the position that it did not violate the law in any respect.

23.    Does anyone feel that, under any circumstances, filing a lawsuit against Defendant Camden County is wrong? Does anyone feel that they would have trouble judging the facts of this case or being fair and impartial? If the facts show that Plaintiff is a victim of Defendant's alleged discrimination and interference of his federal rights, would you have any trouble compensating him for his losses?

24.    Is there anyone on the panel who feels Defendant should not be held accountable if the facts show that the County broke the law by not accommodating Plaintiff's disability or by interfering with his right to exercise his FMLA leave?

### III.    LEGAL SYSTEM

25.    Has anyone on the panel, or any member of your family or close friend, ever filed a lawsuit or been sued?

26.    Has any member of the panel heard from any source that some people may abuse the legal system from time to time? What are your feelings about that? Would that affect the way you approach this case in any way?

27.    Does anyone believe that people turn to courts too quickly to solve problems?

28.    If yes, please tell us what you have heard in this regard.

29.    Does any member of the panel believe that the civil justice system should be changed to limit the ability of employees to bring claims for disability discrimination and interference with FMLA leave?

30.    Does any member of the panel belong to any organization which favors changing the law in order to limit a victim's rights to recover?

31.    Is there any member of the panel who would start this trial with even the slightest negative feelings about the Plaintiff and his case, for any reason at all?

## IV.    SPECIFIC JUROR EXPERIENCE/EXPERTISE

32.    Do you, or any member of your family or any close friend have or had a disability and needed an accommodation? How were you (or that family member/friend) accommodated?

33.    Has any employer of yours ever failed to accommodate a disability for you or any of the people you worked with?

34.    Have you heard of Autism Spectrum Disorder ("Autism")?  What is your understanding of Autism and the effects it has on those who suffer from it?  From where did you get that understanding?

35.    If a party or witness to this case has been diagnosed with Autism, would that negatively impact your feelings about that party or witness in any way?

36.     Have you, or any member of your family or any close friend needed to take FMLA leave? Were you (or that family member/friend) allowed to take that leave under the FMLA?

37. Have you, or any member of your family or any close friend been terminated for taking FMLA leave?

38.     Have you, any member of your family, or close friend ever filed a lawsuit against a government agency? What was the nature of the lawsuit?

39.     Some people have taken the position that lawmakers have gone too far in making laws that regulate the treatment of employees. Does anyone agree with that position?

40.     Have you or someone close to you ever filed a grievance or made a complaint against someone or about something at work? What did it involve? What was the outcome?

41.     Have you, a family member, or a close friend been in a situation where the boss did not tell the truth?

42.     Has anyone sat on a jury before? What kind of case? Did the jury reach a verdict? What was the verdict?

## V.     DAMAGES

43.   This is a civil case in which Plaintiff claims that Defendant failed to accommodate his disability, terminated him because of his disability and complaints of disability discrimination, and interfered with his right to protected medical leave. Plaintiff seeks compensation pursuant to federal law for this loss. Will any member of the panel have difficulty awarding him full and fair compensation in the event that you find that the evidence introduced at trial supports such an award?

44.   Does any member of the panel have personal feelings, religious beliefs or other convictions which would interfere with your ability to award full and fair compensation to Plaintiff in the event that you find the evidence supports an award of money damages?

45.   Does anyone believe that the amount of a verdict should not be above a certain set amount, even if the evidence supports a larger award?

### VII. BURDEN OF PROOF

46.   This is a civil case, not a criminal case. In a civil case each side may present claims or defenses to claims. In a civil case, a party need only prove his/her case by a fair preponderance of the believable evidence. What this means is that if the scales tip ever so slightly in favor of that party, under the law your verdict must be for that party. This is very different from a criminal case, in which the prosecution

must prove the case beyond a reasonable doubt. Does any member of the panel have any difficulty with this concept, or with being able to follow the Court's instructions regarding the burden of proof that parties must bear in civil cases?

**Plaintiffs reserve the right to amend or modify this Attachment B-1 up to five days before trial.**

**Defendant objects to portions of Plaintiff's voir dire.**

**DEFENDANT'S PROPOSED GENERAL VOIR DIRE QUESTIONS**

1.  Where do you live? How long have you lived there? With whom do you live?

2.  What is your marital status?

3.  How Many children do you have?

4.  What is your occupation?

5.  How long have you been employed there?

6.  What is your spouse's occupation?

7.  Have you or a family member ever sued anyone? For what?

8.  Have you of a family member ever been sued? For what?

9.  What civic or volunteer organizations are you involved?

10. Are you now of have you ever been a member of a labor union? If so, which union?

11. Have you ever had a disability?

12. Have you ever requested disability accommodations from your employer?

13. This case involves a man with social anxiety problems. There will be testimony about the difficulties he has in socializing and dealing with criticism from a female superior in the workplace. There will be descriptions

of his difficulties and they will undoubtedly make you feel sorry for him. He claims he was discriminated against.

14. Does anyone feel that they will feel sorry for the Plaintiff because of his issues?

15. Will you be able to put aside your personal feelings and decide the case on its merits?

16. Have any of you ever had issues with your superiors due to that superior being the opposite sex?

17. Do you feel different being criticized by a member of the opposite sex than being criticized by a member of your same sex?

18. Do you believe communication between co-workers within the workplace to be important to the overall goal of the employer?

19. Do you believe co-workers working together within an office setting creates a better office atmosphere?

20. Do you believe working as a team toward a goal is more beneficial than working alone?

21. Does anyone have anxiety about communicating verbally with your co-workers?

22. Do you ever feel stressed in the workplace?

23. Have you ever felt fearful for your job?

24. Have you ever experienced anxiety in the workplace?

25. Do you believe communication by email is as effective as talking to someone face-to-face?

26. Have you ever sent an email to someone that was misinterpreted?

27. If you needed to communicate something important to someone, would you choose to do it verbally face-to-face or through email?

28. How many of you have ever been reprimanded at work?

29. How many of you have ever had an advocate present whenever you received criticism from your employer?

30. How many of you would rather work from home than in an office setting?

31. Do you believe you would be more productive working from home than working in an office?

32. Have you ever had a co-worker you did not get along with?

33. Have you ever had a co-worker than made annoying sounds?

34. How many of you have requested to work from home due to issues you have had with a co-worker?

35. Has anyone ever had an issue with a county government?

36. Has anyone ever spoken during a public meeting of a county government?

37. Has anyone ever served in any role in the government?

38. Does anyone have a negative opinion of governmental entities?

39. Has anyone ever taken issue with any decision ever made by the Camden County Board of Commissioners?

40. Who believes that their county taxes are too high?

41. Who believes that the county government wastes tax payer money?

42. Does anyone feel that they would have trouble judging the facts of this case or being fair and impartial?

43. If the facts show that Plaintiff was not discriminated against, would you have any trouble finding for the Defendant?

44. Is there any member of the panel who has even the slightest negative feelings about the Defendant, for any reason at all?

45. Has any employer of yours ever failed to accommodate a disability for you or any of the people you worked with?

46. Have you, or any member of your family or any close friend needed to take FMLA leave?

47. Have you, any member of your family, or close friend ever filed a lawsuit against a government agency? What was the nature of the lawsuit?

48. Have you or someone close to you ever filed a grievance or made a complaint against someone or about something at work? What did it involve? What was the outcome?

49. Has anyone sat on a jury before? What kind of case? Did the jury reach a verdict? What was the verdict?

50. Does anyone have a negative opinion of governmental entities?

51. This is a civil case, not a criminal case. In a civil case each side may present claims or defenses to claims. In a civil case, a party need only prove his/her case by a fair preponderance of the believable evidence. What this means is that if the scales tip ever so slightly in favor of that party, under the law your verdict must be for that party. This is very different from a criminal case, in which the prosecution must prove the case beyond a reasonable doubt. Does any member of the panel have any difficulty with this concept, or with being able to follow the Court's instructions regarding the burden of proof that parties must bear in civil cases?

**Defendant reserves the right to amend or modify this Attachment B-1 up to five days before trial.**

**Attachment C**

**PLAINTIFF'S PROPOSED VERDICT FORM**

We, the jury in the above-entitled action, give these answers to the following questions:

1. Do you find from a preponderance of the evidence that Defendant Camden County, failed to accommodate Plaintiff's disability as required by law?

    Answer Yes or No          _____

*Please move on to question 2.*

2. Do you find from a preponderance of the evidence that Defendant Camden County, discriminated against Plaintiff because of his disability in violation of the law?

    Answer Yes or No          _____

*Please move on to question 3.*

3. Do you find from a preponderance of the evidence that Defendant Camden County, retaliated against Plaintiff for opposing disability discrimination in violation of the law?

Answer Yes or No      _____

*If you have answered "Yes" to question 1, **or** question 2, **or** question 3, please move on to question 4. If you have answered "No" to **all** three questions above, please move on to question 5.*

4. Do you find from a preponderance of the evidence that Plaintiff should be awarded damages?

Answer Yes or No      _____

If your answer is "Yes,"
in what amount?      $_____

*Please move on to question 5.*

5. Do you find from a preponderance of the evidence that Defendant Camden County, interfered with Plaintiff's rights to take FMLA leave as required by law?

Answer Yes or No          _____

*Please move on to question 6.*

6. Do you find from a preponderance of the evidence that Defendant Camden County, retaliated against Plaintiff's for attempting to exercise his rights to take FMLA leave?

Answer Yes or No          _____

*If you have answered "Yes" to question 5 **or** question 6, please move on to question 7. If you have answered "No" to question 5 **and** question 6, this ends your deliberations.*

7. Do you find from a preponderance of the evidence that Plaintiff's should be awarded damages?

Answer Yes or No          _____

If your answer is "Yes,"
in what amount?          $_____

SO SAY WE ALL.

46

_____
Foreperson's Signature

DATE: _____

**<u>Attachment C</u>**

**DEFENDANT'S PROPOSED VERDICT FORM**

We, the jury in the above-entitled action, give these answers to the following questions:

1. Do you find by a preponderance of the evidence that Plaintiff was discriminated against because of a disability?

     Answer Yes or No          _____

     *If Yes, please move to #2. If No, please move to #4.*

2. Do you find by a preponderance of the evidence that Defendant Camden County, retaliated against Plaintiff?

     Answer Yes or No          _____

     *If Yes, please move to #3. If No, please move to #4.*

3. Do you find from a preponderance of the evidence that Plaintiff should be awarded damages under the ADAAA?

     Answer Yes or No          _____

     If your answer is "Yes,"
     in what amount?          $_____

     *If Yes or No, please move to #4.*

4. Do you find from a preponderance of the evidence that Defendant Camden County, interfered with Plaintiff's rights to take FMLA leave?

     Answer Yes or No  _____

     *If Yes or No, please move to #5.*

5. Do you find from a preponderance of the evidence that Defendant Camden County, retaliated against Plaintiff's for taking FMLA leave?

     Answer Yes or No  _____

     *If Yes to #4 and/or #5, please move to #6. If No to #4 and #5, you are done.*

6. Do you find from a preponderance of the evidence that Plaintiff's should be awarded damages under the FMLA?

     Answer Yes or No  _____

     If your answer is "Yes,"
     in what amount?  $_____

SO SAY WE ALL.

       _____
       Foreperson's Signature

DATE: _____

RESPECTFULLY SUBMITTED this 18th day of January 2019.

**BARRETT & FARAHANY**

s/ *Adeash AJ Lakraj*
Adeash AJ Lakraj
Georgia Bar No. 444848
*Attorney for Plaintiff*
1100 Peachtree Street, Suite 500
Atlanta, GA 30309
(404) 214-0120
ajlakraj@justiceatwork.com

**HALL BOOTH SMITH, P.C.**

s/ *Charles A. Dorminy*
Charles A. Dorminy
Georgia Bar No. 001315
s/ William S. Mann
William S. Mann
Georgia Bar No. 964223
*Attorney for Defendant*
3528 Darien Highway, Suite 300
Brunswick, Georgia 31525
(912) 554-0093
cdorminy@hallboothsmith.com
wmann@hallboothsmith.com