# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

ROBERT CASTLEBERRY,

    Plaintiff,

v.

CAMDEN COUNTY,

    Defendant.

CIVIL ACTION NO.: 2:16-cv-128

## O R D E R

The above-styled action is set for trial on June 4, 2019. Doc. 61. This Order concerns Defendant's Motion to Compel. Doc. 71. For the following reasons, the Court **DENIES** Defendant's Motion to Compel, doc. 71, and **DENIES** Plaintiff's request for attorney's fees. Doc. 78 at 6.

## BACKGROUND

Multimedia Holdings Corporation ("Multimedia"), a non-party to this action, does business under the tradename First Coast News ("FCN").[1] Doc. 77 at 1–2, 9–10. On June 29, 2017, FCN aired an interview between Shelby Danielsen, a reporter employed by Multimedia, and Plaintiff. Id. at 3–4; Doc. 77-2. The interview "focused on" Plaintiff's claim that Defendant terminated Plaintiff from his job after he disclosed his autism diagnosis. Doc. 71 at 1–2.

On August 2, 2017, Defendant mailed a subpoena duces tecum to Multimedia. Doc. 71 at 2. This subpoena requested, among other things, that Multimedia provide Defendant: (1) a written transcript of the interview broadcast; (2) all e-mail correspondences between the reporter

---

[1] First Coast News is not the name of any corporate entity; rather, it is a tradename owned by Multimedia and registered in the State of Florida. Doc. 77-2 at 1–2. Two television stations (WTLV-TV and WJXX-TV) "broadcast news under the tradename First Coast News." Doc. 77 at 2–4. WTLV-TV and WJXX-TV are "separate divisions of Multimedia . . . ." Id.

and Plaintiff; (3) any documents Plaintiff provided to the reporter; and (4) copies of "any and all" videotape and audio recordings made "prior to or during" Plaintiff's interview "which resulted in the footage that aired on June 29, 2017 on WLTV." Doc. 71 at 2; Doc. 71-1 at 1, 4.

On August 16, 2017, Multimedia's in-house counsel spoke with Defendant's attorney about the subpoena and objected to producing anything more than a copy of the footage broadcast and the related online written news article. Doc. 77-2 at 3–4. Around this time, Multimedia provided Defendant with "a DVD containing a copy of the videotape of the broadcast" (described by Defendant as a "slightly extended cut" of the interview), as well as "on-line written materials" already made public. Doc. 71 at 2–3; Doc. 77 at 5–6. Multimedia did not produce any raw footage, transcripts, e-mail correspondence, or documents it received from Plaintiff. Doc. 71 at 2.

On October 3, 2017, counsel for Multimedia called Defendant's counsel to discuss the sufficiency of the documents provided as well as the subpoena as a whole. Doc. 77 at 6; Doc. 77-1 at 1–2. Counsel for Multimedia left a voicemail message. Doc. 77-1 at 1–2. Defendant's counsel did not respond. Id. Multimedia's counsel understood that discovery in this case had closed on September 15, 2017 and no party had filed a motion to extend discovery. Id. Based on those facts, Multimedia's counsel assumed the "lack of a return call" indicated Defendant found the produced documents sufficient and had "decided not to pursue the matter further." Id.; Doc. 23 at 2; Doc. 77 at 6. Based on the circumstances, Multimedia elected not to move for a protective order or move to quash the subpoena. Doc. 77 at 6, Doc. 77-1 at 1–2.

In its opposition to Defendant's Motion to Compel, Multimedia explains that by the time it received Defendant's subpoena the unused footage from Plaintiff's interview had already been deleted. Doc. 77-2 at 3–4. In support of this claim, Plaintiff filed submitted a declaration under

28 U.S.C. § 1746 from Multimedia reporter Shelby Danielsen in which Danielsen states under oath that unused footage is both automatically and manually deleted from Multimedia's storage systems on a frequent and regular basis, and that Multimedia conducted a search for unused footage responsive to the subpoena, but found none. Id.

**DISCUSSION**

**I.  Service of the Subpoena and the Entity to Whom the Subpoena was Directed**

Multimedia first argues Defendant's Motion to Compel should be denied because: (1) service by mail is insufficient because Rule 45 subpoenas must be personally served; and (2) Defendant incorrectly named First Coast News—which is not a corporate entity—as the target of the subpoena, rather than Multimedia. Doc. 77 at 9–10. The Court addresses each argument.

Rule 45(b)(1) provides that "[s]erving a subpoena requires delivering a copy to the named person . . . . " Fed. R. Civ. P. 45(b)(1). The Eleventh Circuit Court of Appeals has not fully resolved the need for personal service of a Rule 45 subpoenas, and district courts have reached different conclusions. See TracFone Wireless, Inc. v. Nektova Grp., LLC, 328 F.R.D. 664, 667 (S.D. Fla. 2019); In re Falcon Air Exp., Inc., No. 06-11877, 2008 WL 2038799, at *1 (Bankr. S.D. Fla. May 8, 2008) (noting a "split of authority among courts" in resolving the requirements of Rule 45 service and rejecting "as antiquated" interpretations that Rule 45 requires personal service); Klockner Namasco Holdings Corp. v. Daily Access.Com, Inc., 211 F.R.D. 685, 687 (N.D. Ga. 2002) (collecting cases); Rainey v. Taylor, No. 18-24802, 2019 WL 1922000, at *2 (S.D. Fla. Apr. 30, 2019) ("Rule 45 itself does not require service to be accomplished" any particular way; "rather, it only requires "deliver[y]" of the subpoena." (quoting Fed. R. Civ. P. 45)).

The courts which "support the position that Rule 45 does not require personal service" generally find Rule 45 "requires service reasonably calculated to ensure receipt of the subpoena by the witness." TracFone, 328 F.R.D. at 667 (collecting cases) ("[S]ervice of the third party subpoenas permitted . . . may be made by FedEx or UPS, as such methods are reasonably calculated to ensure receipt of the subpoena by the witness which . . . is the appropriate standard [for service of a subpoena] under Rule 45."); see also Rainey, 2019 WL 1922000, at *2 (finding service which is "reasonably calculated to ensure actual receipt of the subpoena" and which results in "actual notice" to the non-party "is sufficient"); In re MTS Bank, 2018 WL 1718685, at *3 (holding that "service of the subpoena [was] properly effectuated" because the non-party received the subpoena); SEC v. Rex Venture Grp., LLC, No. 5:13-MC-4, 2013 WL 1278088, at *2 (M.D. Fla. Mar. 28, 2013) (finding proper service when the subpoena was served to the non-party by FedEx and certified mail). Thus, "service of a subpoena can be proper under Rule 45, absent personal service, because there is no explicit requirement in the rule itself on the method of delivery." In re MTS Bank, No. 17-21545, 2018 WL 1718685, at *3 (S.D. Fla. Mar. 16, 2018). Moreover, sending the subpoena by certified mail is "reasonably calculated to ensure receipt of the subpoena by the witness." TracFone, 328 F.R.D. at 667; see Rainey, 2019 WL 1922000, at *2–3. The undersigned finds this reasoning most persuasive and agrees that personal service is not required for service of Rule 45 subpoenas.

Multimedia also argues that the subpoena did not name a proper party. Defendant named "First Coast News" as the party "to whom the subpoena is directed." Doc. 71-1 at 1. However, First Coast News is not an independent entity but rather a registered tradename owned by Multimedia. Doc. 77 at 2–4. In this case, the distinction between First Coast News and Multimedia is inconsequential. It is indisputable that Multimedia received the subpoena even

though Defendant addressed the subpoena to First Coast News.  It does not appear that Multimedia originally challenged the subpoena on these grounds, or refused to respond, and Multimedia did not elect to seek a protective order or move to quash the subpoena.  Moreover, after receiving the subpoena, Multimedia communicated with Defendant's counsel about the subpoena, raised other objections to the subpoena, and ultimately mailed responsive documents to Defendant's counsel.  Doc. 77 at 3–6.  Multimedia's conduct in responding to the subpoena, demonstrate that Multimedia accepted and responded to the subpoena as the controlling entity of First Coast News and for all intents and purposes treated the subpoena as one that named Multimedia.  Finally, Multimedia has now appeared through counsel and challenged the propriety of the subpoena on other grounds.  Multimedia cannot now raise a technical challenge to the named entity after its extensive conduct responding to the subpoena, which was indisputably directed to the public name used for its news agency.

**II.     Defendant's Motion to Compel**

Under Rule 34(c) of the Federal Rules of Civil Procedure, courts may compel non-parties to "produce documents and tangible things" in compliance with Rule 45.  Fed. R. Civ. P. 34(c).  "In general, a Rule 45 subpoena is a discovery vehicle to be used against non-parties to, among other things, obtain documents relevant to a pending lawsuit."  Hatcher v. Precoat Metals, 271 F.R.D. 674, 675 (N.D. Ala. 2010).  Rule 45(d)(1) requires parties "take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1); Felio v. Hyatt, No. 1:12-CV-4186, 2014 WL 12634467, at *3 (N.D. Ga. Aug. 7, 2014).  Under Rule 45(d)(3)(A), courts are required to "quash or modify a subpoena" when, in part, the subpoena "requires disclosure of privileged or other protected matter" or "subjects a person to an undue burden."  Fed. R. Civ. P. 45(d)(3)(A); see also Felio, 2014 WL 12634467, at *3

(observing that orders enforcing subpoenas "must protect the nonparty from significant expense resulting in compliance"). Additionally, "Rule 45 must be read in conjunction with Federal Rule of Civil Procedure 26 because the latter rule 'clearly defines the scope of discovery for all discovery devices.'" Hatcher, 271 F.R.D. at 675 (quoting 9 Wright & Miller, Federal Practice & Procedure; Civil 3d § 2452 (3d ed. 2008)); Kona Spring Water Distrib., Ltd. v. World Triathlon Corp., No. 8:05-CV-119, 2006 WL 905517, at *2 (M.D. Fla. Apr. 7, 2006) ("[A] court must examine whether a request contained in a subpoena duces tecum is overly broad or seeks irrelevant information under the same standards set forth in Rule 26(b) . . . .").

Rule 26 allows parties to obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Information within Rule 26's scope of discovery "need not be admissible in evidence to be discoverable." Id. The Court, however, must limit discovery when: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."[2] Fed. R. Civ. P. 26(b)(2)(C); Pinehaven Plantation Properties, LLC v. Mountcastle Family LLC, No. 1:12-CV-62, 2013 WL 6734117, at *1 (M.D. Ga. Dec. 19, 2013) ("In short, a district court may limit discovery when the burden of compliance outweighs its likely benefit or relevance.").

---

[2] Under Rule 26(b), discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b).

Importantly, "[n]on-party status is a factor courts may consider when analyzing whether a subpoena is unduly burdensome." Pinehaven, 2013 WL 6734117, at *2 ("It is a generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery." (quoting Zukoski v. Philadelphia Elec. Co., No. CIV. 93–4780, at *3 (E.D. Pa. Nov. 14, 1994))). "The burden on the non-party is particularly great when the party issuing the subpoena seeks private information." Pinehaven, 2013 WL 6734117, at *2. Thus, "even if the discovery may be relevant for impeachment purposes, the court may nonetheless limit non-party discovery when the information is available through less-intrusive avenues." Id. (quoting Buckley Towers Condo., Inc. v. QBE Ins. Corp., No. 07–22988–CV, 2008 WL 2645680, at *5 (S.D. Fla. June 26, 2008)).

With these principles in mind, the Court first considers whether the information Defendant seeks to compel is consistent with the scope of discovery, as delineated by Rule 26(b).[3] First, Defendant requests a written transcript of the taped and recorded interview. Doc.

---

[3] While Plaintiff and Multimedia dispute the timeliness of Plaintiff's Motion to Compel, for purposes of this Order, the Court assumes (without deciding) that Plaintiff's Motion to Compel is timely. Discovery closed in this case on September 15, 2017. Doc. 23 at 2; Doc. 59 at 3. Defendant first sent its subpoena to Multimedia on August 1, 2017, well within the time period for discovery. Doc. 77 at 2. Though Defendant filed the instant Motion to Compel on April 26, 2019, over a year after the close of discovery, Defendant maintained its objection to Multimedia's response to its subpoena in a status report submitted on October 2, 2017 and again in the Consolidated Proposed Pretrial Order filed January 18, 2019. Doc. 24 at 1; Doc. 59 at 3; Doc. 71; compare Puritan Inv. Corp. v. ASLL Corp., No. Civ. A. 97-1580, 1997 WL 793569, at *5 (E.D. Pa. Dec. 9, 1997) (quoted in Circle Grp., 836 F. Supp. 2d at 1352) ("[W]hen a party . . . is aware of the existence of documents before the discovery cutoff date and issues . . . subpoenas after the discovery deadline has passed, then the subpoenas and discovery requests should be denied." (quoting McNerney v. Archer Daniels Midland Co., 164 F.R.D. 584, 588 (W.D.N.Y. 1995))), with Rasmussen v. Cent. Fla. Council BSA, Inc., No. 6:07-cv-1091, 2010 WL 11508114, at *2 (M.D. Fla. Jan. 22, 2010) (allowing a subpoena brought after close of discovery which sought an original and complete set of bank records previously requested but incompletely produced during discovery). Thus, despite the late date of the Motion to Compel, it does not appear that Defendant is attempting to improperly obtain evidence by using its Motion and subpoena as "discovery device[s] on the eve of trial." Puritan Inv. Corp., 1997 WL 793569, at *5. Accordingly, though the Court does not decide that Defendant timely filed its Motion, for purposes of this Order, the Court will treat Defendant's Motion as timely.

71 at 2; Doc. 71-1 at 4. Secondly, Defendant desires copies of Plaintiff's e-mail correspondences with the Multimedia interviewer, as well as any documents Plaintiff provided to that interviewer. Doc. 71 at 2; Doc. 71-1 at 4. Finally, Defendant seeks copies of the "raw footage" of Plaintiff's interview.[4] Doc. 71 at 2; Doc. 71-1 at 4.

As to all the information sought, Defendant asserts that "FCN has sole possession of the documents" sought and that production of such documents is necessary for "[p]roper presentation of the Defendant's case." Doc. 71 at 5. Defendant also believes the requested materials will show "whether [Plaintiff] has made statements or acted in ways inconsistent with his claims." Id. However, Defendant does not provide any more detail as to what incongruities may exist or which claims the interview will contradict. Id.

### A.     Written Transcripts

First, as to the request for a written transcript, Defendant and Multimedia agree that Multimedia provided Defendant a CD containing, among other things, "a publicly-available news article[,]" as well as "the footage actually broadcast on television and a slightly extended cut of the same material." Doc. 59 at 3; Doc. 71 at 2; Doc. 77 at 5–6. Thus, a copy of Plaintiff's interview is currently in Defendant's possession. Doc. 71 at 2. Defendant does not allege that the recording of the interview (or any portions thereof) are confusing, hard to hear, or otherwise indecipherable. Additionally, the record provides no indication that a written transcript already exists. Thus, this is not a request to compel discovery—it is a request to have Multimedia transcribe an audio and video recording already provided to Defendant. The Court will not

---

[4]   In the subpoena, Defendant also requested "[c]opies of any and all photographs taken . . . during [the] interview with [Plaintiff]." Doc. 71-1 at 4. However, Defendant did not include this request in its Motion to Compel. Doc. 71 at 2–3. Thus, the Court will not consider the photographs in this Order.

8

require a nonparty to bear the expense of creating a new document in response to a subpoena.[5] As a written transcript "can be obtained from some other source that is more convenient, [and] less burdensome,"—specifically, because Defendant is capable of transcribing the recording itself—the Court **DENIES** this part of Defendant's Motion to Compel. Fed. R. Civ. P. 26(b)(2)(C).

### B. E-Mail Correspondences and Documents

Similarly, the Court will not order Multimedia to produce e-mails or documents Plaintiff sent Multimedia's reporter. Defendant argues access to these documents would "show whether [Plaintiff] has made statements or acted in ways inconsistent with his claims." Doc. 71 at 5. Other than this vague assertion, Defendant does not provide any detail as to what statements it thinks the e-mails might contain or what claims might be contradicted, or even whether such materials even exist. Moreover, although Defendant seeks documents Plaintiff provided to Multimedia's reporter, Defendant does not allege specifically what types of documents it hopes to obtain.

More importantly, Defendant could have sought and obtained these e-mails and documents directly from Plaintiff during the discovery period.[6] Defendant had "access to [the] relevant information" during discovery through means other than a third-party subpoena and

---

[5] Cf. Nazer v. Five Bucks Drinkery LLC, No. 8:16-CV-2259-T-36JSS, 2018 WL 1583640, at *2 (M.D. Fla. Apr. 2, 2018) ("Rule 34 limits a request for production to documents which are in the opposing "party's possession, custody, or control" and does not require a party to create new documents for production." (quoting Fed. R. Civ. P. 34(a)(1))); Kaplan v. Kaplan, No. 210CV00237, 2010 WL 11474437, at *1 (M.D. Fla. Oct. 8, 2010) (noting that parties "are not required to create new documents for . . . production" in response to a Rule 34 request for production).

[6] Defendant has not indicated that it made any effort to obtain these materials from Plaintiff, whether such efforts were unsuccessful, or any other reason why it would need to obtain the requested materials from non-party Multimedia.

9

could have "obtained" the information "from some other source"—namely, from the Plaintiff—and had "ample opportunity" to do so.[7] Fed. R. Civ. P. 26(b).

Defendant's delay in bringing the Motion is a relevant factor in determining whether granting the Motion to Compel and enforcing the subpoena would impose an undue burden on the non-party Multimedia. Defendant waited over a year and a half after serving the subpoena before bringing its Motion and filed its Motion two months after the trial date was set with only seven weeks remaining before trial. At this late date, the burden of compliance is high, and the probative value of what Defendant seeks remains low. Se. Mech. Servs., Inc. v. Brody, No. 1:09-cv-86, 2009 WL 3095642, at *3 (N.D. Ga. June 22, 2009) ("When ruling on motions to compel in the Rule 45 context, courts apply a balancing test, weighing the probative value of the documents sought against the burden of complying with the subpoena."). Thus, the Court will not allow Defendant to seek non-party discovery through its Motion to Compel, particularly where Defendant could have obtained the same materials during the discovery period from Plaintiff. See, e.g., Pinehaven, 2013 WL 6734117, at *2 (denying a motion to compel when the burden of compliance "outweigh[ed] the marginal benefit of establishing bias" because the moving party "provided nothing more than speculation" as to what impeachment material the sought-after records contained and could have obtained similar information "through other discovery devices"). The Court, therefore, **DENIES** Plaintiff's Motion to Compel insofar as it relates to e-mails and documents sent by Plaintiff to Multimedia.

---

[7] At the very least, Defendant had from August 1, 2017 (when Multimedia received the subpoena) to September 15, 2017 (the close of discovery) to attempt to obtain this information from Plaintiff. Doc. 23 at 2; Doc. 77 at 2.

### C. The Raw Footage

This leaves only Defendant's request for raw video footage. Multimedia asserts that unpublished materials fall within the scope of the reporter's privilege under Eleventh Circuit case law and Georgia law. Doc. 77 at 11–16. Defendant argues that, under Eleventh Circuit case law, the documents it requests are not covered under the reporter's privilege and, even if the reporter's privilege extends that far, Defendant "overcomes that privilege." Doc. 71 at 3–6.

The Court need not reach the privilege issue because Multimedia states—and it is undisputed—that by the time Multimedia received Defendant's request for a subpoena, the "unused raw footage from the interview" had already been deleted. Doc. 77 at 5; Doc. 77-2 at 3–4. These statements are made under oath by Shelby Danielsen, the Multimedia employee who interviewed Plaintiff. Doc. 77-2. This declaration set out Multimedia's data-retention practices as to raw footage and why such footage was already deleted and destroyed before it received Defendant's subpoena. Felio, 2014 WL 12634467, at *4 (ordering a news station to "file an affidavit signed by" a news station official "stating that said videos were lost and destroyed" if "the non-broadcast material" was, in fact, "lost or destroyed").

In her declaration, Ms. Danielsen writes that "unused footage is retained" for about a week due to limited "computer storage capacity." Doc. 77-2 at 3–4. Danielsen "manually delete[s]" raw footage stored on one computer system "more often than once per month." Id. Another system "automatically deletes" raw footage "within a week." Id. Multimedia received Defendant's subpoena "more than a month" after "the original broadcast." Id. After receiving the subpoena, Danielsen states she "diligently searched for any unused raw footage" but "could not find any." Id. She concludes that, "to the extent that any such raw footage ever existed, by the time the subpoena was received it was no longer retained." Id.

Multimedia filed a declaration on the record which demonstrates that the evidence at issue—the raw footage—had been destroyed before Multimedia received Defendant's subpoena. As this evidence no longer exists, the Court **DENIES as moot** Defendant's Motion insofar as it requests raw, unedited, broadcast footage.

## II.     Defendant's Good Faith Efforts to Confer

The Federal Rules of Civil Procedure, as well as this Court's Local Rules, require that a motion to compel "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1); Local R. 26.5 ("Counsel are reminded that Fed. R. Civ. P. 26(c) and 37(a)(1) require a party . . . moving to compel discovery to certify that a good faith effort has been made to resolve the dispute before coming to court."). The Court laid out these requirements in a previous Order and explicitly "required [the parties] to confer and fully comply with Rules 26(c)(1) and 37(a)(2) of the Federal Rules of Civil Procedure, and Local Rule 26.5, by undertaking a sincere, good faith effort to try to resolve all differences without Court action or intervention."[8] Doc. 4 at 5–6.

Defendant failed to meet these requirements. Importantly, counsel for Multimedia represents in a declaration under 28 U.S.C. § 1746 that she did not "receive any further communication from [Defendant's] attorneys" after the August 16, 2017 conversation and that she "never had the opportunity to speak with [Defendant's] counsel before the instant Motion to Compel was filed." Doc. 77 at 6; Doc. 77-1 at 1–2. Defendant does not directly dispute this but

---

[8] Additionally, if disputes still existed after a sincere, good faith effort to confer, the Court's Order required the parties to "schedule a telephonic conference with the Magistrate Judge in an effort to try to resolve the discovery dispute prior to the filing of any motions." Doc. 4 at 5–6 (emphasis in original). The Court cautioned parties it would "refuse to hear any discovery motion unless the parties have made a sincere, good faith effort to resolve the dispute and all of the above-identified steps have been strictly complied with." Id.

merely writes that, "despite [its] good-faith attempts to get [Multimedia] to comply with the subpoena, [Multimedia] has failed to do so." Doc. 71 at 2.

Defendant provides no detail as to what their attempts to facilitate compliance included, asserting only that "Defendant has spoken with counsel for [Multimedia] . . . ." Id. at 2–3. This is not enough. See State Farm Mut. Auto. Ins. Co. v. Howard, 296 F.R.D. 692, 2013 WL 6834364 at *5 n.11 (S.D. Ga. Dec. 27, 2013) (observing that the "duty to confer" requires "meaningful" efforts and that "[m]ore than a 'we met and talked' certification is needed"); see, e.g., Herrera-Velazquez v. Plantation Sweets, Inc., No. 6:14-cv-127, 2015 WL 5613195, at *5 n.6 (S.D. Ga. Sept. 23, 2015) ("This Court has applied the duty to confer requirement in the Rule 45 context" (collecting cases)); Hernandez v. Hendrix Produce, Inc., No. 6:13-cv-053, 2014 WL 953503, at *1–2 & n.4 (S.D. Ga. Mar. 10, 2014) (denying a motion to quash "without prejudice to refile it after upholding [the] duty to confer" when the moving party failed to confer with opposing counsel). Thus, the Court finds that Defendant failed to follow the requirements of Rule 37(a)(1) and this Court's Local Rule 26.5 and this Court's Order, doc. 4, before filing its Motion to Compel. Thus, the Court also **DENIES** Defendant's Motion to Compel on this ground.

### III.    Plaintiff's Request for Costs

Plaintiff requests an award of costs and attorneys' fees incurred when opposing Defendant's Motion to Compel. Doc. 78 at 6. Rule 37(a)(5)(A) does allow an award of "the movant's reasonable expenses incurred in making the motion [to compel], including attorney's fees" when "the motion [to compel] is granted[.]". Fed. R. Civ. P. 37(a)(5)(A). "Rule 45," however, "does not provide for an award of attorneys' fees and expenses" related to "motion[s] to compel production of documents under subpoenas." Patel v. Bhakta, No. 1:15-CV-562, 2015

13

WL 12159208, at *4 (N.D. Ga. Apr. 29, 2015) (collecting cases). Rather, Rule 45(d)(1) allows courts to "impose appropriate sanction[s]" on the "party or attorney responsible for issuing and serving a subpoena" if that party fails to "take reasonable steps to avoid imposing undue burden or expense *on a person subjected to the subpoena*." Fed. R. Civ. P. 45(d)(1) (emphasis added). Additionally, the Court warned the parties that failure to confer in good faith about discovery disputes before filing a Motion to Compel and cautioned that failure to comply "may result in a denial of any motion with prejudice" or "result in an award of costs and reasonable attorney's fees." Doc. 4 at 6.

Here, Plaintiff is not the party subject to the subpoena. Rather, Plaintiff is requesting attorney's fees even though Defendant filed the subpoena and Motion to Compel against Multimedia. Although Plaintiff chose to oppose Defendant's Motion, doc. 78, Plaintiff is not subject to the subpoena. Thus, even when successfully defending against a motion to compel arising from a Rule 45 subpoena warrants sanctioning the moving party, the Court would not award attorney's fees to Plaintiff. Furthermore, the circumstances of Defendant's Motion to Compel are not such that the Court would impose sanctions on Defendant for pursuing the Motion. The Court, therefore, **DENIES** Plaintiff's request.

## CONCLUSION

For the above reasons, the Court **DENIES** Defendant's Motion to Compel, doc. 71. The Court also **DENIES** Plaintiff's request for attorneys' fees, doc. 78 at 6.

**SO ORDERED**, this 14th day of May, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA